NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ZULEIMA BOTELLO, a minor, by and through her Guardian ad Litem, SONIA BURRUETE,<br><br>            Plaintiff,<br>   v.<br><br>MORGAN HILL UNIFIED SCHOOL DISTRICT, et al.,<br><br>            Defendants.<br>_____/ | No. C09-02121 HRL<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND (2) GRANTING DEFENDANTS' MOTION TO STRIKE**<br><br>**[Re: Docket No. 12]** |

     Plaintiff Zuleima Botello, a former seventh-grade student within defendant Morgan Hill Unified School District ("MHUSD"), was allegedly harassed by her classmates because she is a lesbian or is perceived to be lesbian. This harassment culminated in April 2008 when another student physically attacked Botello at school, causing her to suffer a skull fracture. Botello's mother later transferred Botello and her three siblings out of the school district. Botello then sued MHUSD and eighteen individual defendants affiliated with MHUSD, alleging that they failed to address and prevent the harassment against her in violation of federal and state law.

     MHUSD and nine of the individual defendants[1] now move to dismiss Botello's claims for failure to state a claim. They also move to strike plaintiff's request for a preliminary injunction.

---

[1] These defendants are Principal Barbara Nakosane (incorrectly named in the complaint as Nakasome); Assistant Principals Glenn Webb and Rex Coffman; teachers Alex Aasen, Wilbert White, Leonard Webb, Judy Kenney, and Richard Nathanson; and campus supervisor Tammy Keck. Plaintiff did not serve any of the other individual defendants named in the complaint.

Plaintiff opposes the motion in part.[2] Upon consideration of the motion papers and the arguments of counsel at the hearing, the court (1) grants in part and denies in part defendants' motion to dismiss for failure to state a claim[3] and (2) grants defendants' motion to strike.

**LEGAL STANDARD**

On motion, a court may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The federal rules require that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2). Yet a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" fails to show such entitlement. *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1950 (2009). The complaint's well-pled facts must instead "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Consequently, only plausible claims for relief will survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1950. A claim is plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. A plaintiff does not have to provide detailed facts, but the pleading must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* Indeed, allegations that are conclusory are "not entitled to be assumed true." *Id.* at 1951.

**DISCUSSION**

**A. Motion to Dismiss Pursuant to the Eleventh Amendment**

Defendants move to dismiss most of plaintiff's claims against MHUSD and the individual defendants in their *official* capacities on Eleventh Amendment grounds. Plaintiff does not oppose defendant's motion on this basis for all claims except the second (Title IX) and sixteenth

---

[2] Plaintiff filed her opposition late and she also failed to conform to the page number limit and formatting requirements under this court's local rules. *See* N.D. Cal. Civ. L. R. 7-3 & 7-4. Although the court has accepted plaintiff's opposition as filed, the court urges that plaintiff's counsel review the local rules carefully before filing papers in the future.

[3] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties who have appeared in this action have expressly consented that all proceedings may be heard and finally adjudicated by the undersigned. Defendants who have not been served are not deemed "parties" to the action within the rules requiring consent to magistrate judge jurisdiction. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995); *see also United States v. Real Prop.*, 135 F.3d 1312, 1317 (9th Cir. 1998).

(declaratory relief). (Opp'n 5–6.) Accordingly, defendants' motion to dismiss all claims except the second and sixteenth against both MHUSD and the individual defendants in their official capacities is granted without leave to amend.

**B.  Motion to Dismiss Claims against Individual Defendants**

Defendants also move to dismiss many of plaintiff's claims against the individual defendants. For convenience, the court will discuss similar federal and state law claims in succession, rather than proceeding in strict numeric order.

*1.  Claim 2: Title IX*

Plaintiff's second claim is one for a violation of Title IX, 20 U.S.C. §§ 1681–88. Title IX provides that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a). "[S]exual harassment is a form of discrimination for Title IX purposes." *Davis ex rel. LaShonda D. v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649–50 (1999). Such discrimination may also include "student-on-student sexual harassment" if "sufficiently severe." *Id.* at 650.

Botello pleads that the defendants violated her right to be free from sexual harassment at school. (Compl. ¶ 44.) Defendants argue that this claim fails against the non-administrative employee defendants Aasen, White, Leonard Webb, Kenney, Nathanson, and Keck because they are not "appropriate persons" who could respond to a Title IX complaint. Plaintiff counters that they are appropriate persons because they had the authority to suspend students under California law and because discovery might reveal that they had additional authority.

Title IX protects individuals from discrimination practiced "by recipients of federal funds." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 287 (1998). An "appropriate person" must have notice of possible violations before funding can be terminated on account of a Title IX violation. § 1682. "An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser*, 524 U.S. at 290. This requirement ensures that funding is not removed "where a recipient was unaware of the discrimination." *Id.* at 289.

///

3

Although Title IX contains an implied private right of action for damages, that right does not extend to claims against individuals. *See Davis*, 526 U.S. at 639–41 ("The Government's enforcement power may only be exercised against the funding recipient, . . . and we have not extended damages liability under Title IX to parties outside the scope of this power."); *see also Williams v. Bd. of Regents*, 477 F.3d 1282, 1300 (11th Cir. 2007) ("Title IX does not allow claims against individual school officials; only funding recipients can be held liable for Title IX violations."); *Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1577 (N.D. Cal. 1993) ("[I]t is the educational institution that must be sued for violations of Title IX."). Thus, regardless of whether the non-administrative employee defendants are "appropriate persons" for purposes of notification, liability for a violation of Title IX does not extend beyond the funding recipient in this case—MHUSD. Accordingly, defendants' motion to dismiss this claim against the non-administrative employee defendants[4] is granted without leave to amend.

### *2.     Claim 12: California Sex Discrimination*

Botello also alleges that defendants violated her right to be free from sexual harassment pursuant to California law. (Compl. ¶ 67.) California law states that "[n]o person shall be subjected to discrimination on the basis of . . . gender . . . or sexual orientation . . . in any program or activity conducted by an education institution that receives . . . state financial assistance." Cal. Educ. Code § 220. Title IX's standards apply to claims brought under section 220. *Donovan v. Poway Unified Sch. Dist.*, 84 Cal. Rptr. 3d 285, 314 (Ct. App. 2008). Liability is based on "the recipient's *own* deliberate indifference to discrimination" and there must be notice "to the funding recipient" of possible violations. *Id.* at 311, 313. Therefore, just as with Botello's Title IX claim, only MHUSD, as the funding recipient, can be liable under section 220. *Id.* at 296 & n.3. As a result, defendants' motion to dismiss this claim against the non-administrative employee defendants is granted without leave to amend.

### *3.     Claim 3: Federal Due Process*

Botello's third claim asserts that defendants violated her due process rights under the Fourteenth Amendment. The Fourteenth Amendment provides that "no state shall . . . deprive any

---

[4] Defendants do not move to dismiss the Title IX claim against the administrative employee defendants, but a claim against such individuals would also fall within this limitation.

4

person of life, liberty, or property, without due process of law." U.S. Const. amend XIV, § 1. Defendants argue that plaintiff cannot assert a due process claim because third parties caused her harm—not defendants. Botello counters that her claim is valid because there was a "special relationship" between her and the school on account of California's compulsory school attendance laws. She also asserts that school personnel tolerated and encouraged a climate where her classmates were able to victimize her.

In general, "a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 197 (1989). There are two exceptions to this general rule: the "special relationship" exception and the "danger creation" exception. *Morgan v. Gonzales*, 495 F.3d 1084, 1092 (9th Cir. 2007).

The special relationship exception may apply where the State has "restrain[ed] the individual's freedom to act on his own behalf—through incarceration, institutionalization, or other similar restraints of personal liberty." *Deshaney*, 489 U.S. at 200. However, courts—even in those cases to which Botello cites[5]—consistently have held that compulsory school attendance does not give rise to an affirmative due process duty to protect against third-party harms. *See, e.g.*, *Maldonado v. Josey*, 975 F.2d 727, 731 (10th Cir. 1992); *D.R. ex rel. L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1372 (3d Cir. 1992); *Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1579 (N.D. Cal. 1993). Botello argues that California recognizes a special relationship between students and schools, but a special relationship for tort liability purposes does not implicate the Fourteenth Amendment. *See Deshaney*, 489 U.S. at 202 (noting that the Due Process Clause "does not transform every tort committed by a state actor into a constitutional violation").

The second exception, danger creation, is not based on a special relationship. Instead, this exception "arises when 'affirmative conduct on the part of the state' places a party in danger he otherwise would not have been in." *Morgan*, 495 F.3d at 1093 (quoting *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992)). Courts have found liability under the danger creation exception where the

---

[5] Plaintiff used as support for her argument several dissenting and concurring opinions without alerting the reader that she was not citing the opinions of the courts.

5

defendant's affirmative acts resulted in harm to the plaintiff. *See, e.g.*, *Wood v. Ostrander*, 879 F.2d 583 (9th Cir. 1989) (police officer stranded a car passenger outside in the cold in a high crime area); *L.W.*, 974 F.2d 119 (state medical facility assigned a female nurse to work alone with a violent sex offender); *Penilla v. City of Huntington Park*, 115 F.3d 707 (9th Cir. 1997) (police officers locked a seriously ill man in his house and cancelled a 911 request); *Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082 (9th Cir. 2000) (police officer ordered a drunk person to leave a bar in hypothermic conditions); *Kennedy v. City of Ridgefield*, 439 F.3d 1055 (9th Cir. 2006) (police officer notified an alleged child molester of his accuser's report without prior notice to the accuser as promised). Botello does not allege that defendants engaged in any affirmative conduct—rather, she alleges that they failed to do anything at all. The danger creation exception therefore does not apply to Botello's claim, and defendants' motion to dismiss this claim is granted without leave to amend.

### *4. Claim 9: California Due Process*

Botello also alleges that defendants' conduct violated her due process rights under the California Constitution. (Compl. ¶ 61.) Just like the U.S. Constitution, the California Constitution protects persons from deprivation of "life, liberty, or property without due process of law." Cal. Const. art. I, § 7(a). As this language suggests, California's Due Process Clause is "identical in scope with the federal due process clause." *Owens v. City of Signal Hill*, 201 Cal. Rptr. 70, 72 n.2 (Ct. App. 1984). As the scope of the federal Due Process Clause does not include a claim for failure to protect from private violence (absent certain exceptions that this court has already found do not apply), neither does the scope of the California Due Process Clause. Defendants' motion to dismiss this claim therefore is granted without leave to amend.

### *5. Claim 4: Federal Privacy*

Plaintiff's fourth claim asserts a violation of her right to privacy as protected by the First, Fourth, Ninth, and Fourteenth Amendments of the U.S. Constitution. (Compl. ¶ 50.) Defendants argue that Botello's claim fails because she has made no allegation that they disclosed her personal information or infringed her ability to make certain important decisions. Botello counters that defendants did violate her right to privacy because they asked her improper, irrelevant questions about her private sex life.

6

Avoiding disclosure of personal matters is constitutionally protected. *Whalen v. Roe*, 429 U.S. 589, 598–600 (1977). This protection is not limited to the state's disclosure of personal information—it also includes a plaintiff's compelled disclosure of personal information. *See Thorne v. City of El Segundo*, 726 F.2d 459, 468 (9th Cir. 1983) (finding that a plaintiff's right to privacy was invaded when she was forced to disclose information about her sex life to her state employer). Botello pleads that defendant Aasen asked her about her sexual orientation when she was harassed in his presence. (Compl. ¶ 22.) She also pleads that defendant Coffman asked her about her virginity and sexual practices when she reported the harassment to him. (Compl. ¶ 30.) She does not allege that any of the other individual defendants made such inquiries.

Questions about Botello's sexual orientation, virginity, and sexual practices fall within the scope of her constitutionally protected privacy rights. That said, she has not alleged that she was forced to disclose personal information in the face of such questioning. She argues that "being asked questions by a teacher or an assistant principal is, itself, inherently coercive" (Opp'n 18), but without an allegation that plaintiff actually disclosed private information to defendants in response to their questions, she raises no privacy claim. Accordingly, defendants' motion is granted as to all defendants except Aasen and Coffman without leave to amend, and is granted as to defendants Aasen and Coffman with leave to amend.

### 6. *Claim 6: California Privacy*

Botello also alleges that the defendants' questioning violated her right to privacy under the California Constitution. (Compl. ¶ 55.) Defendants again argue that without an allegation that they disseminated or misused Botello's private personal information, her state privacy claim fails.

The California Constitution lists privacy as an inalienable right. Cal. Const. art. I, § 1. The three elements of a California privacy claim are (1) "the identification of a specific, legally protected privacy interest," (2) "a reasonable expectation of privacy," and (3) "a sufficiently serious" invasion of privacy. *Hill v. Nat'l Collegiate Athletic Ass'n*, 865 P.2d 633, 654–55 (Cal. 1994). Botello has sufficiently pled that she had a legally protected privacy interest in her sexual activity and a reasonable expectation of privacy. However, she has not pled that she suffered a sufficiently serious invasion of her privacy interest because she did not allege anything more than that defendants Aasen

and Coffman asked her inappropriate questions. Consequently, just as with her federal privacy claim, defendants' motion is granted as to all defendants except Aasen and Coffman without leave to amend, and is granted as to defendants Aasen and Coffman with leave to amend.

### 7.     *Claim 5: Conspiracy*

Plaintiff's fifth claim alleges that that the defendants "conspired to violate [her] constitutional and statutory rights" and that each "performed at least one overt act in furtherance of said conspiracy." (Compl. ¶¶ 52–53.) Defendants argue that Botello's conspiracy claim fails because she has not alleged facts suggesting that the defendants agreed to act in concert. They also assert that this claim requires heightened pleading. Botello disagrees and argues that she has alleged a plausible claim.

As an initial matter, a heightened pleading standard is only necessary when the Federal Rules of Civil Procedure require it. *Empress LLC v. City and County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005). The Federal Rules do *not* require heightened pleading for "malice, intent, knowledge, and other conditions of a person's mind." Fed. R. Civ. P. 9(b). This extends to allegations of "improper motive." *Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002). As a result, Botello's conspiracy claim does not require heightened pleading.

Nevertheless, Botello must still allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement" between the defendants. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007). Plaintiff argues that the defendants' "deliberate indifference . . . and . . . intentional failure to take action to remedy the harassment could not have existed but for the collective decision of all defendants to ignore each report made to them." (Reply 20–21.) She also asserts that "one can infer" that "the defendants who received actual notice of [a] specific incident decided collectively that they would not provide any effective response." (Reply 21.) Yet these are merely conclusory statements; Botello has not pled facts to plausibly support a conspiracy claim.[6] Consequently, defendants' motion to dismiss this claim is granted with leave to amend.

///

---

[6] Botello does allege that she and her mother complained to defendants Nakosane and Coffman, but it is unclear from her pleading whether she made her complaints to both defendants at the same time or to each defendant separately. (Compl. ¶ 30.)

8

### 8. *Claim 7: California Right to Safe Schools*

Plaintiff does not oppose defendants' motion to dismiss her seventh claim, which alleges a violation of the California Constitution's Right to Safe Schools as found in article I, section 28(c). (Opp'n 22.) Defendants' motion to dismiss this claim is granted without leave to amend.

### 9. *Claim 8: California Equal Protection*

Botello's eighth claim alleges that the defendants violated her equal protection rights under the California Constitution. (Compl. ¶ 59.) The California Constitution prohibits the denial of "equal protection of the laws." Cal. Const. art. I, § 7(a). Defendants assert that Botello's claim fails because personal injury damages are not available for violations of California equal protection. Plaintiff does not address this argument in her opposition.

In California, a plaintiff "may not sue for personal injury damages under article I, section 7, subdivision (a) for a violation of [her] civil rights." *Gates v. Superior Court*, 38 Cal. Rptr. 2d 489, 516 (Ct. App. 1995). Botello primarily requests damages in her request for relief, but she also requests equitable relief.[7] (Compl. 23.) Thus, although she is not entitled to a damage award on this claim, equitable relief is still available. Defendants' motion to dismiss this claim is denied.

### 10. *Claim 11: California Ralph Act (Freedom from Violence)*

Botello's eleventh claim alleges that the defendants violated her right to be free from violence under state law. California law provides that "[a]ll persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence" committed against them on account of various characteristics, including sex and sexual orientation. Cal. Civ. Code § 51.7; *see also* Cal. Civ. Code § 51(b) (listing the characteristics that apply). Defendants argue that Botello has made no allegation that they committed or threatened to commit violent acts against her nor any allegation that they aided, incited, or conspired with students to commit such violence. They say that a mere failure to prevent harassment does not equal aiding or abetting. Botello counters that defendants' inaction "sent a message which incited and emboldened" continued harassment by her peers and as such, that defendants "provided substantial assistance and or encouragement" to her classmates' harassment and violence.

---

[7] Defendants have moved to strike plaintiff's request for a preliminary injunction, but plaintiff's complaint also requests a permanent injunction.

9

Although Botello refers to this claim as part of the Unruh Act, section 51.7 is instead part of the Ralph Act. Ralph Civil Rights Act of 1976, § 1, 1976 Cal. Stat. 5778; *Stamps v. Superior Court*, 39 Cal. Rptr. 3d 706, 714 (Ct. App. 2006). The Ralph Act borrows classification information from the Unruh Act (section 51), but the Ralph Act's focus is on violence and threats of violence, rather than on general discrimination like the Unruh Act.[8]

Botello has not pled that defendants committed any violence against her or intimidated her by threat of violence. Yet a person may also be liable for a violation of the Ralph Act if he "aids, incites, or conspires" to deny a person's rights under the Act. Cal. Civ. Code § 52(b). Defendants argue that even so, Botello must plead facts that show they gave "substantial assistance or encouragement" to plausibly claim aiding or abetting. (Mot. 18.) However, the case to which defendants cite in support of this standard involved a claim alleging joint tortfeasor liability for battery. *See Austin B. v. Escondido Union Sch. Dist.*, 57 Cal. Rptr. 3d 454, 469 (Ct. App. 2007) (discussing when liability may be imposed on one who aids or abets an intentional tort). Furthermore, it is conceivable that a jury could find liability under section 51.7 as to the individual defendants if it believed they had knowledge of the violence and did nothing to stop it. *Cf. Winarto v. Toshiba Am. Elects. Components, Inc.*, 274 F.3d 1276, 1290 n.16 (9th Cir. 2000) (finding that the record supported a jury's finding that a supervisor who knew of violence committed by one of his subordinates, and failed to address plaintiff's complaints of such violence, had aided the person who actually committed the violence). Because Botello has pled that defendants' inaction and apparent indifference to the harassment and threats of violence against her aided her classmates' harassment and violence, she has raised a plausible claim under section 51.7. Defendants' motion to dismiss this claim is denied.

### *11. Claim 15: Intentional Infliction of Emotional Distress*

Plaintiff's final substantive claim is one for intentional infliction of emotional distress. (Compl. ¶ 75–76.) She says that as a result of defendants' conduct, she suffered "severe emotional distress, pain and suffering, fear, anxiety, embarrassment, discomfort, depression, and humiliation." (Compl. ¶ 76.) Defendants argue that Botello has pled no facts showing that their conduct was

---

[8] Defendants have not moved to dismiss Botello's Unruh Act claim (claim 10) as to the individual defendants in their personal capacities.

extreme and outrageous and that her allegations are based on her deficient conspiracy claim. Botello counters that defendants' conduct was outrageous because "serious harassment occurred right in front of school officials," but that they did nothing. (Opp'n 25.) She says that even more, defendants chose to suspend *her* after she was physically attacked. She asserts that this conduct shows that defendants "intentionally ignored or recklessly disregarded the foreseeable risk that plaintiff would suffer severe emotional distress." (Opp'n 26.)

Intentional infliction of emotional distress requires "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Cervantez v. J. C. Penney Co.*, 595 P.2d 975, 983 (Cal. 1979). "Recovery is not limited to cases in which the defendant in fact *intended* to cause emotional distress, but includes those cases in which the defendant acted with reckless disregard of the probability such distress would result." *Marlene F. v. Affiliated Psychiatric Med. Clinic, Inc.*, 770 P.2d 278, 284 (Cal. 1989).

Just as with her claim for conspiracy, Botello does not plead facts that plausibly suggest that defendants "intentionally planned and acted to violate Plaintiff's statutory and constitutional rights." (Compl. ¶ 75.) However, she does raise a plausible claim that the defendants' conduct—both their inaction and the act of suspending her after she was attacked—was outrageous under the circumstances and amounted to a reckless disregard of the probability that severe emotional distress would result. Accordingly, defendants' motion to dismiss this claim is denied.

**C.     Motion to Dismiss Defendant Tammy Keck**

Defendants assert that Botello's complaint fails to support any claim against defendant Tammy Keck because she has only alleged that the April 2008 fight took place in front of Keck. They say that this is insufficient to provide Keck with fair notice of the claims against her. Botello argues that Keck is a proper defendant because she "knew or should have known that plaintiff was being sexually harassed by her peers . . . and that her failure to take action to prevent the attack upon plaintiff would subject her to a claim that she violated plaintiff's civil rights." (Opp'n 26–27.)

///

11

A complaint must provide a defendant with fair notice of the claim and its grounds. *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citation omitted). Botello pleads that the April 2008 fight took place in front of Keck, which alone would be insufficient to support Botello's claims against her. However, she also pleads that Keck, in her role as the campus supervisor, "had knowledge that Plaintiff . . . had requested help to safeguard her safety" and that Keck did nothing even though she knew the identity of plaintiff's primary aggressor. (Compl. ¶ 31.) Although this court has dismissed plaintiff's due process claims based on inaction, other claims survive where Keck's alleged inaction could give rise to liability. As such, Keck is a proper defendant and defendants' motion to dismiss her is denied.

## D.  Motion to Strike

Finally, defendants move to strike plaintiff's request for a preliminary injunction.[9] On motion, a court may strike "any redundant, immaterial, impertinent, or scandalous matter" from a pleading. Fed. R. Civ. P. 12(f). Defendants say that a preliminary injunction is improper because it is impossible for Botello to show that she is in danger of imminent, irreparable harm as she is no longer a student in the school district. Botello rejects this assertion, claiming that "[t]he potential of imminent harm . . . is constantly present" and that it "has not abated." (Opp'n 27–28.) She says that the transfer out of the district "imposed a severe burden" upon her, but that it was done "because she would have been subject to irreparable harm as her very life was in immediate danger." (*Id.*) She says that she intends to return to the district in the future, and that without a preliminary injunction, she "is in danger of suffering imminent, irreparable harm at the hands of the MHUSD." (Opp'n 28.)

A federal court may grant a preliminary injunction where the plaintiff can show that "irreparable injury is *likely* in the absence of an injunction." *Winter v. Nat'l Res. Def. Council*, --- U.S. ----, 129 S. Ct. 365, 375 (2008). A possibility of imminent harm is insufficient. *Id.* at 375–76. Furthermore, a plaintiff "must do more than merely allege imminent harm; . . . she must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."

///

---

[9] At times, defendant refers to this request as one to strike "an injunction." Plaintiff has requested as relief both a preliminary injunction and a permanent injunction. Given the parties' arguments for this issue, the court interprets defendants' request as one to strike only the preliminary injunction.

12

*Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1410 (9th Cir. 1991).

Botello pleads that she is no longer a student within the MHUSD. She also pleads that she was "forced to withdraw from school in order to feel safe" (Compl. ¶ 41) and even admits that she transferred out of the school district to avoid irreparable harm. (Opp'n 27–28.) Therefore, she fails to plausibly claim that irreparable harm is likely at the hands of defendants at this time. *See Doe ex rel. Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1576 (N.D. Cal. 1993) (noting that an injunction was not available because the plaintiff was no longer a student in the defendant school district). Furthermore, her claimed intent to return to the MHUSD in the future—which she did not plead in any case—does not change this calculus. A desire to return to the district someday fails to support a claim that she is currently at risk of immediate, irreparable injury. Accordingly, defendants' motion to strike Botello's request for a preliminary injunction is granted.

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1. The following claims are dismissed without leave to amend:
    a. All claims except the second and sixteenth against both MHUSD and the individual defendants in their official capacities,
    b. Claim 2 against the non-administrative employee defendants in both their official and individual capacities,
    c. Claim 12 against the non-administrative employee defendants in their personal capacities,
    d. Claims 3, 7, and 9 against all individual defendants in their personal capacities, and
    e. Claims 4 and 6 against all individual defendants in their personal capacities except defendants Aasen and Coffman.
2. The following claims are dismissed with leave to amend:
    a. Claims 4 and 6 against defendants Aasen and Coffman in their personal capacities, and

13

    b. Claim 5 against the individual defendants in their personal capacities.

 3. Defendant's motion to strike plaintiff's request for a preliminary injunction is granted.

 4. Plaintiff may file an amended complaint within fourteen days of this order.

Dated: November 18, 2009

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**C 09-02121 Notice will be electronically mailed to:**

John Joseph Falcocchia     jjflawoffices@yahoo.com
Mark E. Davis     mdavis@davisyounglaw.com, dmyers@davisyounglaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**